Michael Schaffler on behalf of Appellant Winston Ross. I'm going to try to reserve some time for rebuttal, three minutes. I'd like to begin by focusing the court on what I think are the two most significant and possibly the hardest questions presented by Mr. Ross' appeal. Both of those questions relate to the subpoena issue which was raised in the brief and that is the issue of Judge Rehl's failure to issue the subpoena for Jeffrey Mishler. I have a question about that. The way I had always understood that provision of law when I was a district judge was you issue the subpoena unless it's some nut that wants the President of the United States and the Governor to testify about their conspiracy against him. You just issue the subpoena or if the defendant wants the government to have to throw a few hundred thousand dollars at subpoenaing meaningless witnesses. This guy, I was sort of surprised the subpoena didn't issue but it's hard for me to see what harm was done. It looks as though Ross was engaged in his statements to investors before and after, before he got involved with Mishler and after he knew that Mishler wasn't making the money. Your Honor, I agree with the Court first with respect to the issue of the subpoena. I think the Court has the right framework for whether it should have issued. With respect to the harmlessness of Judge Rehl's failure to issue the subpoena, I think that what we have is Jeffrey Mishler who, although it's not part of the record, we now since now have looked it up. He's been in writing.  You're right, Your Honor. You know, the proffer was a farce. I mean, how can you say that there's anything to this proffer? It is believed that Jeffrey Mishler can provide relevant and vital testimony to this case. Gone. I mean, what? It is believed? There's no showing at all of any relevance of any testimony. Well, I think there, Your Honor, I would respectfully disagree. I think there is. You think that proffer's sufficient? I think that there are other parts of the proffer that are sufficient to raise the issue. And additionally, Your Honor, I think that the proffer is not just limited to what proffer was made in Mr. Ross's motion under Rule 17b. I think that you also have to include the government's. Yeah, under Crenshaw. But the government's proffer shows that there's nothing exculpatory in this man's testimony. It would be inculpatory. And that's the point that I think Judge Kleinfeld is trying to make. If we look at the government's addition to the record, it doesn't show anything that's going to help your client. I think it does, Your Honor. I think it shows that. Show me, show us where it, what the government put in its information would help your client. Okay. Well, I think, and I cited some of this in our brief, if I could direct the Court's attention. Yeah, I know. We've read your brief, but I mean, this is oral argument. Well, Your Honor, what was said in the, what was made in the government's proffer was that Mr. Mishler, in fact, did invest money that Mr. Ross provided to him, that Mr. Mishler was the one who was in charge of making the decisions of how to invest those funds. Mr. Mishler was the one who made, certainly made some representations to Mr. Ross about what he. Do I have this right? The way I had it, or understood it was, the defense is basically, I'm not the con man. Mishler is the con man. I'm another victim. I was con, just like you were, and I put your money with Mishler, and lo and behold, Mishler turned out to be a phony and lost your money. I thought that was the defense. So it mattered to me what the timing was of when he started with Mishler and when he knew that Mishler was losing the money, but he was still telling the investors, it's a sure thing. Right. I think that what we know is from the government's interview with Mr. Mishler, that Mr. Mishler and Mr. Ross were meeting at least as far back as September 2002. But if, in fact, he continues, Mr. Ross continues to take money and to solicit investments after he already lost all but $35,000 of a $500,000 investment with Mishler, it's hard for me to understand what good faith defense is then left. And so maybe you could explain what the theory of defense that required Mishler's testimony would be. Well, I think the theory of the defense that the trial counsel tried to advance is the good faith defense, and it's essentially what Judge Kleinfeld set forth, which is that Mr. Mishler is the one who is feeding the information that Mr. Ross is then submitting or providing to his investors, that it's Mr. Ross has himself been taken in by Mr. Mishler. And how does that extend to the post-loss solicitations after he lost a $500,000  Well, I guess, Your Honor, I think that, first of all, it seems that there's various different investments, and I don't think that there's from the record you can say that all of the money was going to Mr. Mishler. But what subpoenaing Mr. Mishler would have allowed would have been, would have allowed an evaluation of whether maybe some of the charges need to be severed, whether there's some differences between some of the different charges that are made in the indictment. But going back to the point that the Court has asked, I think that Mr. We certainly don't know the substance of the discussions between Mr. Mishler and Mr. Ross, and that was exactly what we were trying to get, what Mr. Ross was trying to get at through his request for the subpoena, is to have Mr. Mishler take the stand and testify. And certainly Mr. Mishler came, and as provided by the 302 that the government submitted, Mr. Mishler came to court and he told, of course, his story, which was inculpatory to Ross and exculpatory to himself. There's lots of reason to, that that story may have fallen apart on cross-examination, and that's what I was getting at about the hint that, you know, Mr. Mishler, we knew at the time that the defense counsel submitted that exhibit to his proffer, which showed that Mr. Mishler was already being investigated for fraud himself. And in the best case scenario, if we've gotten, if trial counsel had gotten everything he wanted from Mishler in the trial, what would have been the best case scenario that would have made a difference to the verdict? Well, I think in the best case scenario, Mr. Mishler takes the stand, and trial counsel gets out from him that he was the one who was making these representations to Mr. Ross, and that Mr. Ross was simply conveying those representations to his investors. Well, that has a hard time of getting anywhere. When he got the $35,000 back, he put it in his own account rather than sending it to 4J, and then even after that, he continued to make solicitations and send out e-mails even after he knew that Mishler had lost $500,000. And I don't see how that explanation gets anywhere. Well, I think that we don't necessarily know what Mr. Mishler told Mr. Ross about those $500,000. We know Mr. Mishler says, I told him I lost it, and he wasn't in concern. It was actually the original proffer. I mean, your client theoretically knew what Mr. Mishler said. Why didn't he lay it out? Well, I think, Your Honor, and as I admitted in the brief, of course, with hindsight, it could be a clear proffer. But when you look at the rule, the way the rule is structured, it's not structured for a defendant to have to lay out his defense. In fact, the rule changed in 1966. Prior to that, there was a much harder showing that had to be met in order for a defendant to get a subpoena. And what the advisory committee notes specifically say So was this a deliberate tactic to keep your hand under the table? I wasn't to trial, Your Honor. I don't know that. But I don't think that he was obligated to set forth his defense at trial or his theory of defense in order to get a witness to come to court to provide that evidence. I thought it was kind of obvious, actually, even from the skimpy proffer, the idea is to blame Mishler instead of Ross. I think, Your Honor, I agree. I mean, I think that there's enough there for the court to infer that that's what he's trying to, you know, some other dude did a defense, essentially, or a good faith defense. He's trying to point the finger somewhere else. Tell me, how did the government find out about the proffer? I thought these things were under seal. You know, I don't know that. I assume there must have been some discussion, but I don't know. One reason you're kind of careful about what you disclose in preparation for trial is so that the other side won't be able to head you off at the pass. And I couldn't figure out how all of a sudden, what was it, eight days afterwards the government files this thing about Mishler? How'd they know you wanted Mishler? I don't know the answer to that, Your Honor. I do know that certainly during the deposition of Mr. Ross' son, the defense counsel asked Mr. Ross' son questions about Mr. Mishler. And at that time, Mr. Ross' son indicated that he didn't know much about Mr. Mishler. And to the extent he did know that, what he did know was hearsay and was coming from, you know, secondhand. And the government was at that time objecting to that information on the basis of that. What's the ultimate standard or review we impose on Judge Reel's decision? Well, it's an abuse of discretion standard. That's a pretty deferential standard, isn't it? I mean, abuse. It is, Your Honor. But in the Sims case, what the Court, what this Court holds is that it's a much narrower abuse of discretion standard than the ordinary one. How do you work it? The rule sounds like abuse of discretion, but it's a constitutional provision about the right to subpoena. Usually with constitutional error, it has to be harmless beyond a reasonable doubt with them, if I recall the formula right. And with a discretionary rule, it's the other extreme, abuse of discretion. We've got some kind of in-between abuse. I don't understand how to review it. It seems that way, Your Honor. And the case that I focused on is the Sims case, which is a case from this Court also reviewing one of Judge Reel's refusals to issue a subpoena. It's a similar case. Conceitedly, it's, I think, a case where there was a stronger showing in that case. But what they did in the Sims case was that was a case where the defense wanted to subpoena witnesses who would testify to an insanity defense. And Judge Reel refused to issue the subpoenas on the basis that they weren't relevant. The witnesses wouldn't provide relevant testimony because it was too remote in time to support an insanity defense. And there, there's really very little discussion about the significance of the error. The case goes to trial. The defendant's convicted. And on review from this Court, the Court finds that the subpoena should have, in fact, issued and essentially reversed it because the fact that the witness went to the theory of the defendant's defense. And essentially, the effect of denying the subpoena, it results in effectively denying the defense. Thank you, Counsel. Thank you. Good morning, Your Honors. May it please the Court. Douglas Axel on behalf of the United States. In this Court's previous opinions on this issue, citing the briefs, particularly Smith, the 1991 decision, and the so happy case, 1985, it is the defendant's burden to establish the relevance of the proffer testimony in the Rule 15 application. Counsel, it's not much of an application. But the advisory committee notes and the history of the rule do make it pretty clear that it isn't that demanding a standard. My experience as a district judge, I mentioned that you turn down these subpoenas when they look like they're crazy or just designed to be burdensome, and otherwise, ordinarily, defendants get to subpoena their witnesses, just like the government. I guessed as soon as I saw that skimpy proffer, oh, the idea is to say Mishler's the con man and he cons me. It seemed like it was kind of obvious. Your Honor, I would submit that the key fact that would need to be averred in the application, which was well within the defendant's ability to avert, was some communication between Mishler and Ross. Now, why should he have to lay all that out if he says Mishler is a relevant witness as he did? This Court's decisions establish that the defendant must make some showing of relevance. I would submit that there wouldn't need to be too much, but there would need to be, at a minimum, some statement as to what Mishler told Ross. There's only the statement that Ross invested money with Mishler, which is the government's indictment charged that the defendant lost the investor's money and risked it in profitable ventures. Well, that's what I thought made it obvious, actually. The government says I lost the investor's money and made misrepresentations to him, and I say I want to call Mishler because I invested the money with Mishler. Certainly, I think one could infer that this was the direction they're headed, but without some statement that Mishler actually said anything to Ross about it. So what it is, even though you can infer it, you think you have to say it explicitly or else the judge may not manage to make the inference or something? I think it's the defendant's burden to make some showing of relevance, and I think the key fact to make it would be some communication between them. Some showing of relevance, but all you need is relevance? Correct. Well, why wouldn't the guy that he put the money with be relevant? Because in order to establish some good faith defense, relevant to the defense, there would have to be something that Mishler told me something on which I relied, and that was totally absent from the petition. Now, let me answer my next question. Yes, Your Honor. One reason that defendants are wary of disclosing any more than they have to is they're afraid it will leak. I couldn't figure out how the government knew that the defendant wanted Mishler and the government wanted to prevent the defendant from getting Mishler, and so the government put in that paper, what was it, eight days later? Yes, Your Honor. We were not aware of the initial application that was filed in camera. The denial, it was a proposed order that Judge Reel had written denied by hand on, came to me through interoffice mail. Once I had seen that, I wanted to make sure that the court and the defense had all the information. Well, I mean, the application was under seal, but the denial wasn't. The denial came. The defense saw the denial and was trying to bulletproof Judge Reel's record. I wanted to make sure that the court and the defense had all the information that we had on the subject, and so I never saw the application until the appeal, but the order did come through interoffice, and that's what triggered the government's filing. So Smith, that you rely on, including so happy Smith, quotes Sims, and it says, if the accused averts any facts which, if true, would be relevant, the request for subpoena must be granted. So that's the first part that you're talking about. You're saying they simply didn't show enough to be relevant. Correct. But if they do, if Judge Kleinfeld is correct that you can draw an inference of relevance, then unless the averments are inherently incredible on their face, and these aren't, or the government shows either by introducing evidence or from matters already of record that the averments are untrue or that the request is otherwise frivolous, do you think this was a frivolous request based on what you submitted? Your Honor, certainly the court, I think it was within the court's discretion to determine that based on the absence of any information in there. The Smith holding was that the defendant simply made unsupported and conclusory claims and that those unsupported and conclusory claims are not sufficient. To the extent Mishler had, in fact, told the defendant anything that would establish a good faith offense, one, the district court could probably conclude that that would have been in there, that the defense would have alleged that. In the absence of any communication from Mishler to Ross, I would submit then it was within the court's discretion under these authorities to deny the request. How do you square this with a person's right to call witnesses to defend himself of constitutional elevation? Your Honor, I would square it by reference to this Court's standards for when one can carry the burden to obtain a subpoena. It would not have required much. It would just have required some statement that Mishler told me these facts or Mishler told me facts that I relied upon when making a statement to the judge. And that would have been sufficient to have compelled the subpoena. If we were to conclude that Judge Reel made a mistake in not subpoenaing this witness and then we get to the question of harmless, would we have to conclude that it was harmless beyond a reasonable doubt? Because we would start from the proposition that you've got a witness relevant to your defense. Yes, Your Honor. There is some split in the circuits that I have seen, whether it's the Chapman harmless beyond a reasonable doubt. This certainly does infringe upon a constitutional right. I would submit that this is harmless beyond a reasonable doubt. And if I could touch on that briefly, Judge Kleinfeld alluded to it. But here we had testimony from two of the victims, Trevor Brewster and Cleopatra Mondesi, that they had invested, based on representations in a seminar that the defendant had made in July of 2002, June and July of 2002, they had invested in July and August of 2002 before the first investment with Mishler according to the interview memorandum. There was also extensive testimony, and it was a key part of the government's case, that even after the defendant had been aware that he had lost investor money in another scam, Easy Bucks, not involving Mishler, that he then continued to solicit investments into March and April of 2002. Lori Lee was a victim that relied on a pitch that the defendant made in late April 2003, which was well after the proffered witness had told Ross that he had also lost the money that he had invested with Mishler. And so we have the exact same representations, exactly the same that the defendant is making to investors before, during, and after the time that he had invested with Mishler. Additionally, the amount of money that was invested with Mishler was only $500,000. He's taken in $6 million over the course of the scheme at 10 percent a month that he had promised investors was guaranteed. So in any event, the amount of money with Mishler was nowhere near sufficient even if Mishler had said something that the defendant had relied upon. So for all those reasons, the Court can conclude, even under the Chapman standard, that the error in not granting the subpoena was harmless beyond a reasonable doubt, unless the Court has any discussion. Roberts. So with Mishler, let me make sure I've got it right. What you've got for harmless beyond a reasonable doubt so that we don't have to resolve the standard is only a half million of $6 million was invested with Mishler and the investments were solicited both pre-Mishler and post-Mishler. Correct. It was $500,000 in the gold palace, the gold games, and another $120,000 given to Mishler for this rebuild America. Now, when did Mishler return $35,000 to Ross and what was that in connection with? That was in connection with rebuild America. It was during the time of the scheme and I believe it was springtime of 2003. It was a little bit later in 2003. And is it conclusively established that he put that into his own account rather than sending it to the investors? Mishler's 302 indicated, according to Mishler, that Ross directed him to put it into not the 4J financial account. It was an account that had the initials of the defendant's children. And that's in the 302 SD account that he directed it to go into. In your remaining few seconds, the district court provided virtually no explanation of the sentence. Why was that sufficient under Cardi in the Supreme Court case? Yes, Your Honor. The district court did indicate the guideline calculation that it had reached. In so doing, it implicitly rejected the government's request for an additional two-level upward adjustment for abuse of trust, which the government's case, as we cited, I think on very close facts, other courts had applied that. The court stated the offense level, stated the criminal history. It did state that it had considered the 3553 factors. It was a within-guideline sentence, having rejected the government's request for an adjustment. The court did emphasize that the defendant had used his position in the church to defraud people after hearing extensive testimony in that regard. And so I would submit that it was procedurally sufficient, given the straightforward arguments that had been made, and substantively reasonable, given that it was a within-guideline sentence. There were no complex issues raised by the defendants. The loss taken was towards the high end of the sentencing guideline range, and the court's emphasis that the defendant had used his church affiliation to defraud people, really abusing their trust in the church in that regard. I didn't see anywhere in the transcript where the district court expressly adopted the PSR, its factual findings. Is that correct? I do not recall seeing that. The court did adopt the PSR's calculation of the offense level. All right. Thank you. Thank you, Your Honor. Thank you, counsel. Unless my colleagues have further questions, we'll submit. United States v. Ross is submitted. Thank you. We'll hear Cedar v. McGrath.
judges: Trott, Kleinfeld, Ikuta